IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

**Jun 23, 2016**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

PHARAOH BUB HAYWOOD,

                Petitioner,

      vs.

RONALD RACKLEY, Warden, Folsom
State Prison,

             Respondent.

No. 2:14-cv-02178-JKS

MEMORANDUM DECISION

Pharaoh Bub Haywood, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Haywood is in the custody of the California Department of Corrections and incarcerated at Folsom State Prison. Respondent has answered, and Haywood has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On April 30, 2012, Haywood was charged with being a felon in possession of a firearm (count 1); negligently discharging a firearm (count 2); misdemeanor evading a peace officer (count 3); misdemeanor resisting a police officer (count 4); and misdemeanor driving on a suspended license (count 5). The information further alleged that Haywood had suffered a prior serious felony conviction. Haywood pled not guilty to all counts and denied the allegation. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Haywood:

> On a rainy new year's evening in 2011, a Sacramento police officer noticed a Chevrolet "muscle car" driving with its lights off. The officer turned on the overhead lights of his police car, but the Chevrolet sped away. After a few minutes, the Chevrolet spun out, and the driver, who was [Haywood], fled on foot, jumping over some residential fences. The officer, who had been chasing [Haywood], stopped and called for

backup when he heard a gunshot.  The backup officers found [Haywood] a short time later in a nearby backyard.  They could not find a firearm.

Within a few hours of [Haywood's] arrest, a forensic police investigator took gunshot residue test samples from [Haywood's] hands.  The samples were examined by forensic criminalist Jason Hooks under an electron scanning microscope.  On the sample taken from [Haywood's] right palm, Hooks found four particles of gunshot residue. From that finding, it was Hooks's opinion [Haywood] fired a weapon, handled a weapon, or was in the vicinity of a fired weapon.  Eight days later, a gun was found in a backyard approximately 44 feet from where [Haywood] was arrested.

*People v. Haywood*, No. C071389, 2013 WL 3466811, at *1 (Cal. Ct. App. July 10, 2013).

On May 1, 2012, Haywood proceeded to a jury trial.  On May 9, 2012, the jury returned guilty verdicts on counts 3 through 5 but was unable to reach a unanimous verdict on counts 1 and 2.  The trial court subsequently declared a mistrial as to those counts.  On May 11, 2012, the court denied probation and sentenced Haywood to one year in county jail on count 3 along with concurrent jail commitments on counts 4 and 5.

On July 9, 2012, the prosecutor filed a second amended information recharging Haywood with counts 1 and 2 as well as re-alleging the prior serious felony conviction.  The same day, a second jury trial commenced.  At the conclusion of that trial, the jury returned guilty verdicts on both counts.  After Haywood waived his right to a jury trial on the prior conviction allegations, the court found them to be true.  The court then sentenced Haywood to an aggregate state imprisonment term of 11 years.

Through counsel, Haywood appealed his conviction, arguing that he was denied the effective assistance of counsel at trial for a variety of reasons and he was prejudiced by the cumulative effect of trial counsel's errors.  The Court of Appeal unanimously affirmed the judgment against Haywood in an unpublished, reasoned opinion issued on July 10, 2013.

2

*Haywood*, 2013 WL 3466811, at *3.  Haywood petitioned the California Supreme Court for review, which was denied without comment on September 18, 2013.

Haywood timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 17, 2014.  *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

Haywood argues that his trial counsel rendered ineffective assistance by: 1) failing to object to testimony on gunshot residue ("GSR") as unreliable; 2) not challenging the GSR expert's qualifications; 3) not effectively cross-examining the GSR expert; 4) failing to offer counter-expert testimony on the inadequacies of the GSR expert's analysis; and 5) successfully moving to exclude Haywood's misdemeanor convcitions and marijuana possession.  He additionally alleges that the cumulative effect of trial counsel's errors prejudiced him and warrants reversal of his conviction.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

In his *pro se* Petition before this Court, Haywood challenges the performance of his trial counsel for a number of reasons.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[1]  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the

---

[1]     *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

*Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Haywood must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

None of Haywood's claims here warrant relief.  First, he argues that trial counsel was ineffective because he did not object to GSR testimony given by forensic criminalist Jason Hooks on reliability grounds under *People v. Kelly*, 549 P.2d 1240 (Cal. 1976) (California state law standard governing the admissibility of certain scientific evidence).  But the Court of Appeal held that *Kelly* did not bar the testimony.  *Haywood*, 2013 WL 3466811, at *1.  This Court is bound by the state appellate court's determination of California law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Because a *Kelly* objection would have been meritless, counsel cannot have been ineffective for failing to make it.[2]

---

[2]     Notably, the *Kelly* standard developed by the California state courts retains certain features of the former federal standard governing the admissibility of scientific evidence developed in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).  In *Daubert*, the Supreme Court set "the standard for admitting expert scientific testimony in a federal trial" by holding that the Federal Rules of Evidence superseded the *Frye* test.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 586-87 (1993).  However, *Daubert* was not decided on

Likewise, Haywood asserts that trial counsel should have called an expert to challenge the scientific value of the GSR testimony.  But as the Court of Appeal explained when rejecting this claim on direct appeal, "defense counsel had a rational strategy for not calling such an expert" because counsel "had talked with another gunshot residue expert and that calling that expert 'would probably make it appear to the jury that Jason Hooks from the district attorney's lab had done a very good job analyzing the [gunshot residue].'"  *Haywood*, 2013 WL 3466811, at *2.  As the Court of Appeal reasoned, "the public defender's reasoning for not calling an expert to challenge Hooks's testimony provided a reasonable tactical reason why defense counsel in this case chose the same course of action."  *Id.*; *see Strickland*, 466 U.S. at 689-90 (reasonable tactical decision by counsel with which the defendant disagrees cannot form the basis of an ineffective assistance of counsel claim).

---

constitutional grounds, but rather concerned the application of federal evidentiary rules.  *See Kumho Tires Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) ("In *Daubert*, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" (citations omitted)); *see also Wilson v. Sirmons*, 536 F.3d 1064, 1101-02 (10th Cir. 2008) ("*Daubert* does not set any specific constitutional floor on the admissibility of scientific evidence.").  As such, "*Daubert* does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution."  *Kinder v. Bowersox*, 272 F.3d 532, 545 n.9 (8th Cir. 2001).  This Court therefore will not consider whether the evidence passed muster under *Daubert*.

Recently, however, the Ninth Circuit held that a petitioner in a § 2254 proceeding can allege a constitutional violation from the introduction of flawed expert testimony at trial if she shows that the introduction of the evidence undermined the fundamental fairness of the entire trial so as to violate due process.  *Giminez v. Ochoa*, ___ F.3d ___, 2016 WL 2620284, at *6 (9th Cir. May 9, 2016).  Because the state courts determined there was no error here, Haywood cannot show resulting fundamental unfairness.  Indeed, at least one Circuit Court has concluded that the reliability of expert GSR testimony was established under *Daubert*.  *See United States v. Stafford*, 721 F.3d 380, 393-94 (6th Cir. 2013).

Haywood next argues that his trial counsel failed to adequately cross-examine Hooks.

The Court of Appeal considered this claim and rejected this claim as follows:

> [Haywood] contends defense counsel was ineffective because he failed to
> cross-examine Hooks on two points: (1) a Los Angeles Times article reporting that the
> Federal Bureau of Investigation laboratory had discontinued analyzing gunshot residue in
> its investigations because there was cross-contamination of samples; and (2) a 2006
> Minnesota trial court ruling rejecting gunshot residue evidence as unreliable.  We
> disagree on both points.
>
> As to the first, defense counsel asked Hooks at least 28 questions covering 16
> pages of testimony eliciting the implication that a secondary source of contamination
> could have caused the gunshot residue evidence here.  The questions covered the gist of
> the article, namely, that cross-contamination due to somebody else touching the gun or
> due to other particles could account for a positive test of gunshot residue.  Counsel's
> performance was not deficient simply because counsel chose this way of eliciting the
> evidence instead of the way [Haywood] now claims counsel should have.
>
> As to the second, defense counsel reasonably did not cross-examine Hooks about
> the 2006 Minnesota trial court ruling because in 2009, the Minnesota Supreme Court
> affirmed a trial court ruling that gunshot residue evidence was reliable.  (*State v. Loving*
> (Minn. 2009) 775 N.W.2d 872, 878–879.)  [Haywood's] second trial was held in 2012.

*Haywood*, 2013 WL 3466811, at *2.

Haywood fares no better on federal habeas review.  The record supports the Court of

Appeal's conclusion that trial counsel effectively cross-examined Hooks regarding the risk of

cross-contamination in GSR testing, and it was reasonable for the appellate court to conclude

that counsel could not be faulted for failing to cross-examine Hooks about the out-of-jurisdiction

trial court ruling.

In a related claim, Haywood argues that counsel failed to adequately challenge Hooks's

qualifications.  But the record supports the Court of Appeal's conclusion that "there was no

reasonable basis on which to challenge Hooks's expertise, and the record shows defense counsel

had a reasonable strategy for challenging Hooks's objectivity."  *Haywood*, 2013 WL 3466811, at

*2.  As the Court of Appeal noted, instead of fruitlessly challenging Hooks's credentials, defense

counsel chose to elicit possible bias in that Hooks worked for the district attorney's office and had never testified as an expert for the defense. Although ultimately unsuccessful, it was a reasonable tactic to challenge the damaging testimony. *See Strickland*, 466 U.S. at 689-90.

Haywood further alleges that defense counsel was ineffective because he successfully petitioned the trial court to exclude from evidence Haywood's misdemeanor convictions from the first trial, which included driving on a suspended license, and his alleged possession of marijuana found near where he was arrested (Ground 4). Haywood claims counsel should have kept this evidence in because the prosecutor wanted to use his flight to prove conscious possession of the firearm, and the fact that he was driving on a suspended license and possessed marijuana could have provided an alternative explanation for the flight. But again, the Court of Appeal concluded that counsel made a reasonable tactical decision to exclude the evidence: "The evidence ran the risk of prejudicing the jury into thinking [Haywood's] flight-related misconduct was part of a larger crime spree, and thus, the jury would have been more inclined to find [Haywood] guilty on the weapons charges. Defense counsel feared that the jury would hear of these prior convictions and the marijuana possession and would 'impugn [Haywood's] character.'" *Haywood*, 2013 WL 3466811, at *3 (citation omitted). This conclusion, which is both reasonable and fully supported by the record, forecloses relief here.

Finally, Haywood alleges that the cumulative effect of defense counsel's alleged errors prejudiced him and warrants reversal of his conviction. "While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness." *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers v. Mississippi*, 401 U.S.

284, 298, 302-03 (1973)).  Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence  in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (citation omitted).  In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. *See Chambers*, 401 U.S. at 294.  As discussed above, however, Haywood does not allege any claims that amount to error, and thus he demonstrates no errors that can accumulate to a level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Accordingly, Haywood is not entitled to relief on his cumulative error claim either.

V. CONCLUSION AND ORDER

Haywood is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 22, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge

11